Jon G. Shadinger, Jr., Esq. (036232017)
Shadinger Law, LLC
2220 N East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| DENNIS MAURER, an Individual<br><br>Plaintiff,<br><br>vs.<br><br>US REALTY FINANCIAL TIC LLC, a Delaware Limited Liability Company,<br><br>Defendant. | Case No. 1:26-cv-11054<br><br>**COMPLAINT** |

## Introduction

Plaintiff, DENNIS MAURER, an individual, on his own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sues the Defendant, US REALTY FINANCIAL TIC LLC, a Delaware Limited Liability Company ("Defendant") for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD").

## The Parties

1. Plaintiff, DENNIS MAURER, is an individual over eighteen years of age and is otherwise

sui juris. Mr. Maurer resides at 8 Prospect Avenue, Egg Harbor Township, NJ 08234.

2. Defendant, US REALTY FINANCIAL TIC LLC, owns and/or operates a place of public accommodation alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

**Jurisdiction and Venue**

3. Defendant's property/place of public accommodation is a shopping center/plaza (adjacent to the Harbor Square Mall) with several tenant spaces located at 6727 Black Horse Pike, Egg Harbor Township, NJ 08234[1] (the "Property").

4. Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs. The Property is located in and does business within this judicial district.

5. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[2]

6. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

7. The Defendant owns, leases, leases to, and/or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendant is thus required to comply with the obligations of the ADA.[3]

8. Plaintiff is an individual with disabilities as defined by and pursuant to the ADA. Mr. Maurer has multiple sclerosis and therefore has a physical impairment that substantially limits

---

[1] also being known as Block 2302, Lot 10 (or a portion thereof) on the municipal tax map of Egg Harbor Township

[2] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202

[3] 28 CFR § 36.201(a) and 28 CFR § 36.104

many of his major life activities[4] including, but not limited to, not being able to walk, stand, reach, or lift. Mr. Maurer, at all times, requires the use of a wheelchair to ambulate.

**Factual Background**

9. Mr. Maurer is a staunch advocate of the ADA. Since becoming mobility impaired (and having to fully rely on the use of his wheelchair to ambulate) he has dedicated his life to the elimination of accessibility discrimination so that he, and others like him, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers. Mr. Maurer is the President of an advocacy group, known as The Independence Project, whose goal is to foster a community of disabled people, educate them as to their rights, and ensure their accessibility to places of public accommodation across the country.

10. Mr. Maurer continues to encounter architectural barriers at many of the places that he visits. Seemingly trivial architectural features such as parking spaces, curb ramps, and door handles are taken for granted by the non-disabled but, when improperly designed or implemented, can be dangerous to those in wheelchairs.

11. The barriers to access that Mr. Maurer experiences at differing places of public accommodation are often similar in nature. For example, he is repeatedly faced with sloping in parking lots, improper curb ramps, abrupt changes of level within paths of travel, and non-accessible restrooms. He has become frustrated and disheartened by the repetitiveness of the complaints he has been forced to make to the employees and management at various establishments in the past; most often to no avail. Thus, he now finds his redress through the ADA; as Congress intended.

---

[4] as defined by 28 CFR § 36.105(b)(1-2)

12. Mr. Maurer has visited the Property many times over the years; his last visit occurring on or about April 7, 2026. During said visit he was a patron/or attempted to patronize several tenants within the shopping center. Mr. Maurer and his family have visited the Property as bone fide patrons with the intent to avail themselves of the goods and services offered to the public within; however, he has found it to be rife with violations of the ADA – both in architecture and in policy.

13. Mr. Maurer intends to return to the Property not only as a patron but also to monitor any progress made with to respect to ADA compliance – he sincerely hopes that any return visit is not made in vain.

14. Mr. Maurer resides approximately 8 miles from the Property. The Property is located within the area of Mr. Maurer's home and in close proximity to locations where he frequently travels, shops, and dines.

15. Mr. Maurer has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety at the Property.

16. The ADA has been law for over thirty (30) years and the Property remains non-compliant. Thus, the Mr. Maurer has actual notice and reasonable grounds to believe that he will continue to be subjected to discrimination by the Defendant.

17. Mr. Maurer has a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described but not necessarily limited to the barriers he has personally experienced which are listed in Paragraph 25.

18. Following any resolution of this matter Plaintiff will ensure that the Defendant undertakes the remedial work that is required to cure existing violations, under the appropriate standard, and in full compliance with the ADA.

**COUNT I**

**Violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.**

19. Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

20. Enacted by overwhelming bipartisan consensus in 1990, and reinforced with the same consensus in 2008, the ADA reflects Congress's recognition that "discrimination" has precluded "many people with physical or mental disabilities" from "fully participat[ing] in all aspects of society."[5]

21. Congress's objective was "the elimination or reduction of physical and social structures" that thwart "equal-citizenship stature for persons with disabilities."[6]

22. Title III of the ADA provides a cause of action to "any person" with disabilities who personally encounters an unlawful accessibility barrier and is thus "subjected to discrimination on the basis of disability." [7]

23. The Defendant has discriminated against the Plaintiff, and other similarly situated mobility impaired persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

24. A preliminary inspection of the Property has shown that violations of the ADA exist. That inspection, performed by Plaintiff's expert, further revealed that the remediation of all

---

[5] 42 U.S.C. § 12101(a)(1)

[6] *Tennessee v. Lane*, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring)

[7] 42 U.S.C. § 12188(a)(1)

violations/barriers listed in Paragraph 25 are both technically feasible and readily achievable. Plaintiff's expert has based this judgement on personal knowledge of materials, pricing, labor, and the completion of similar projects in the area. The remaining barriers to access – which are procedural in nature and/or policy based – will need to be monitored into the future to ensure that the current discrimination is ceased and never reinstituted.

25. The following are architectural barriers and violations of the ADA that Mr. Maurer has personally encountered during his visits to the Property:

**<u>Parking and Exterior Accessible Route</u>**

a. The designated accessible parking spaces at the Property improperly designed and are not maintained. They contain abrupt changes of level due to surface cracking, excessive sloping greater than 2.1%, lack compliant access aisles, not all accessible spaces contain proper access aisles, and the area fails to provide direct compliant accessible routes; violations of the ADAAG and Section 502 of the 2010 ADA Standards. These barriers have presented Mr. Maurer with a tipping hazard which could also cause damage to his wheelchair; to avoid these obstacles (and due to the lack of access aisles) he has had to park away from the building in a flat maintained area, travel around the obstacles, and then through the vehicular area of the lot in order to reach the entrances but even when doing so he must still make use of the improper curb ramp and inaccessible routes because he has no other option.

b. The designated accessible parking area adjacent to tenant space Jalapeno's leads to an improper curb ramp which contains excessive sloping, protrudes into the access aisle, and lacks the requisite level landing area; a violation of the ADAAG and Sections 402 and 406 of the 2010 ADA Standards. When traveling from the parking area to the tenant entrances

Mr. Maurer has been impeded by the improperly designed curb ramp which has caused him frustration and endangered his safety. To access Jalapeno's Mr. Maurer cannot park at any other area of the Property because there is no continuous accessible route which runs the entirety of the Property; see below.

c. The designated accessible parking area fails to provide a compliant accessible route which runs the entire length from the accessible parking areas, past the curb ramps, onto the sidewalks and then to the tenant entrances. Those routes are currently impeded by excessive sloping/cross-sloping greater than 2.1%, obstructions which impeded the width of the routes, and abrupt changes of level greater than ¼"; a violation of the ADAAG and Section 502 of the 2010 ADA Standards. These conditions have presented Mr. Maurer with a tipping hazard which could cause injury from a fall, damage to his wheelchair, and have prevented him to access to the entirety of the Property. For example, Mr. Maurer cannot park at Jalapeno's (located on the north side of the Property) and then travel to Dairy Queen (west side), nor the nail salon (which his wife frequents – on the east side); he would have to return to his van and move the vehicle at least twice in order to access the entire plaza.

d. The exterior accessible route at the Property fails to provide a compliant accessible route which runs along the sidewalk allowing Mr. Maurer to move from tenant space to tenant space. The current route along the exterior sidewalks is impeded by excessive cross-sloping greater than 2.1%, abrupt changes of level greater than ¼", and does not provide access to the entirety of the Property due to obstacles which impeded the width of the route; a violation of the ADAAG and Sections 402 and 405 of the 2010 ADA Standards. These conditions have presented Mr. Maurer with a tipping hazard which could cause injury from a fall, damage to his wheelchair, and prevented him from accessing the entirety of the

Property.

e. The Property may fail to provide the requisite number of fully compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles); a violation of the ADAAG and Section 502 of the 2010 ADA Standards. Due to the lack of compliant accessible parking (specifically the lack of compliant van access aisles), Mr. Maurer has been forced to park away from the shopping center/plaza so that he could freely access his vehicle via his fold-out ramp; doing so and parking without the benefit of an access aisle adds the additional fear of becoming blocked out from his van (or trapped inside) by an adjacent vehicle. The foregoing is dependent upon the total number of surrounding parking spaces that are attributed to the Property and those which are attributed to the adjacent Harbor Square Mall; but the lack of van accessible spaces remains.

f. The Property fails to provide a compliant route to the adjacent street/sidewalk and/or the public transportation route. Mr. Maurer is precluded from accessing the Property from these areas due to the lack of an accessible route; a discriminatory omission which limits his options for access and transportation; a violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards.

**Access to Goods and Services**

g. Tenant spaces Jalapeno's, GNC, Jack & Son Nails Spa, and Dairy Quuen located within the Property provide interior service elements which are mounted beyond the prescribed reach ranges; in violation of the ADAAG and Sections 308 and 904 of the 2010 ADA Standards. Due to their height or the presence of obstacles Mr. Maurer cannot make use of these interior service elements (countertops, work surfaces, etc.).

h. Restaurant tenant spaces Jalapeno's and Dairy Quuen lack the required number of accessible dining tables; a violation of the ADAAG and Section 902 of the 2010 ADA Standards. The tables currently available lack the required clear floor space below and do not allow Mr. Maurer to fully approach with his wheelchair, get his knees underneath, and dine in a comfortable manner.

**Restrooms**

i. The restroom within tenant space Jalapeno's is inaccessible to Mr. Maurer as it contains barriers to access including, but not limited to, obstructions which impede wheelchair maneuvering clearance due to policy failures; a violation of the ADAAG and Section 601 of the 2010 ADA Standards. Due to these barriers Mr. Maurer could not freely make use the restroom.

j. The restroom within aforementioned tenant space contains dispensers (soap, paper towel, toilet tissue) which are mounted beyond the reach of wheelchairs users or blocked by obstructions; violations of the ADAAG and Section 308 of the 2010 ADA Standards. Due to these barriers Mr. Maurer could not freely make use the restrooms.

k. The restroom within aforementioned tenant space contains a lavatory which lacks the required knee clearance; violations of the ADAAG and Section 606 of the 2010 ADA Standards. Due to these barriers Mr. Maurer could not fully approach the sink with his knees underneath to wash his hands.

l. The restroom within aforementioned tenant space provides grab bars which are improperly mounted, contains a toilet that has an improper centerline, and a flush control mounted on the wall side; violations of the ADAAG and Section 604 of the 2010 ADA Standards. Due to these barriers Mr. Maurer cannot independently access the toilet.

m. The use of restrooms door within the aforementioned tenant space is impeded by improper signage and a lack of wheelchair maneuvering clearance; violations of the ADAAG and Section 404 of the 2010 ADA Standards. Due to the lack of clear floor space Mr. Maurer cannot maneuver his wheelchair within to make use of the restroom elements nor can he enter/exit the restroom without assistance due to a lack of latch side clearance.

26. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[8]

27. The discriminatory violations described in Paragraph 25 may not be an exhaustive list of the ADA violations that exist at the Property, but they are the result of a preliminary inspection and include those personally experienced by Mr. Maurer. Given the violations discovered and listed herein the Plaintiff alleges, on information and belief, that there are other violations/barriers at the Property which relate to his disability. Thus, Plaintiff requires thorough inspection of the Property in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA. Once said inspection has been completed, the Plaintiff may amend this complaint in order to provide proper notice to the Defendants regarding the full scope of this

[8] 28 CFR § 36.104

action.[9]

28. Plaintiff, and other mobility impaired persons, will continue to suffer discrimination, injury, and damage without the immediate relief provided for by the ADA and requested herein.

29. Defendant has discriminated against Plaintiff, and other mobility impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

30. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in nature.[10]

31. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[11]

32. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[12]

---

[9] See *Doran v. 7-Eleven Inc.*, (9th Cir. 2008) 524 F.3d 1034 (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them)

[10] 42 U.S.C. § 12181(b)(2)(A)(iv)

[11] 42 U.S.C. § 12181(b)(2)(A)(ii)

[12] 42 U.S.C. § 12181(b)(2)(A)(iii)

33. If the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[13] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

34. Pursuant to 28 CFR § 36.304(a) the Defendant shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable. This duty began at the outset of the ADA and remains continuous and ongoing; thus, the Defendant must ensure that the Property is always accessible to and usable by those in wheelchairs.

35. Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Maurer, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[14] Discovery in this matter will reveal if and when such alterations have taken place at the Property, and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Property into compliance with the ADA.

36. 28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element – that has not been altered – must comply with or be modified to meet. Those are defined as follows:

a. Elements that have not been altered since on or after March 15, 2012, must comply with

---

[13] as defined by 28 CFR § 36.401(a)(2)
[14] 28 CFR § 36.402(a)(2)

the 1991 Standards.

b. Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with either the 1991 Standards or the 2010 Standards.

c. Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

37. Although a plaintiff is not required to notify the Defendant of its violation of the ADA nor the ongoing discrimination prior to the filing of an action, Mr. Maurer has expressed to employees at the Property that barriers to access exist thereupon. To that end, he has found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In his experience the only way to spur action and achieve the accessibility required under the law is to file matters, such as this, and pray for the relief contained herein.

38. Plaintiff is without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

39. Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiff is entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

40. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Property and make such readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendant cures all violations of the

ADA.[15]

**WHEREFORE,** Plaintiff respectfully demands;

a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b. Injunctive relief against the Defendant including an order to (1) cure all ADA violations existing at the Property listed herein and those later found through discovery within the next six months; (2) to make the Property accessible to and usable by individuals with disabilities; and (3) to require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to cease discriminatory practices and to maintain the requisite accessible features at the Property – as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses (including expert fees and costs) pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

## COUNT II

**Violation of New Jersey Law**
**Against Discrimination, N.J.S.A. 10:5-1 et seq.**

41. Plaintiff realleges and incorporates, by reference, all of the allegations contained in all of

[15] 42 U.S.C. § 12188(b)(2)

the preceding paragraphs.

42. The Property is a place of public accommodation as defined by N.J.S.A 10:5-5.

43. New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability. This opportunity is recognized and declared to be a civil right.[16]

44. As set forth above, the Defendant has violated the LAD by denying Mr. Maurer, and all other mobility impaired persons, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

45. As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Maurer has sustained bodily injury through the Defendant's actions – either intentionally or negligently – in the form of emotional distress, mental anguish, dignitary harm, and humiliation; in violation of the LAD.

**WHEREFORE**, Plaintiff respectfully demands;

a. That this Court assume jurisdiction.
b. The Court issue a Declaratory Judgment determining that the Defendant is in violation of the LAD.
c. An injunction ordering Defendant to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.
d. A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted, attorney's fees, and litigation expenses; including expert's fees and costs.

[16] Pursuant to N.J.S.A 10:5-4

e. An order requiring the Defendant to cease discriminatory practices and to maintain the requisite accessible features at the Property – as required by the LAD.

f. Other relief that this Court deems just and proper and is allowable under the LAD.

Respectfully submitted on this 27th day of August 2026,

*/s/ Jon G. Shadinger Jr.*
Jon G. Shadinger, Jr., Esq.
Shadinger Law, LLC
2220 N East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*

Filename: Complaint - Wells Fargo SC.docx
Directory: /Users/jonshadinger/Library/Containers/com.microsoft.Word/Data/Documents
Template: /Users/jonshadinger/Library/Group Containers/UBF8T346G9.Office/User Content.localized/Templates.localized/Normal.dotm
Title:
Subject:
Author: CarmenEstrada
Keywords:
Comments:
Creation Date: 8/27/26 12:43:00 PM
Change Number: 5
Last Saved On: 8/27/26 1:02:00 PM
Last Saved By: J Shadinger
Total Editing Time: 7 Minutes
Last Printed On: 8/27/26 1:02:00 PM
As of Last Complete Printing
Number of Pages: 16
Number of Words: 3,959
Number of Characters: 20,778 (approx.)